Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6215 | **DATE** | 5/9/2001 |
| **CASE TITLE** | Intl Paper Co vs. Androscoggin Energy et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/17/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant the Motion (Doc 23-1) to Dismiss of Defendants Polsky Energy Corporation of Maine, Inc. and Androscoggin Energy, Inc. Accordingly, those Defendants are dismissed from the case. In addition, we grant Counterplaintiff IP's Motion (Docs 24-1 & 24-2) to Compel Arbitration and Stay AELLC's Counterclaim.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices: 3 |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | MAY 10 2001 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SCT | courtroom deputy's initials | MAY 10 2001 date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number

29

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAPER COMPANY,<br>a New York corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDROSCOGGIN ENERGY LLC,<br>a Delaware Limited Liability Company;<br>POLSKY ENERGY CORPORATION<br>OF MAINE, INC., an Illinois corporation;<br>and ANDROSCOGGIN ENERGY, INC.,<br>an Illinois corporation, | ) | |
| | ) | |
| Defendants | ) | 00 C 6215 |
| | ) | |
| ANDROSCOGGIN ENERGY LLC,<br>a Delaware Limited Liability Company, | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL PAPER COMPANY,<br>a New York corporation, | ) | |
| | ) | |
| Counterdefendant. | ) | |

DOCKETED

MAY 1 0 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court are the Motion to Dismiss of Defendants Polsky Energy

Corporation of Maine, Inc. and Androscoggin Energy, Inc., and the Motion to Compel

Arbitration and Stay AELLC's Counterclaim of Plaintiff International Paper Company. For the following reasons, we grant the Motion to Dismiss Count II of the Amended Complaint as it pertains to Defendants Polsky Energy Corporation of Maine, Inc. and Androscoggin Energy, Inc. Furthermore, we grant the Motion to Compel Arbitration and Stay AELLC's Counterclaim.

## BACKGROUND

For purposes of this motion to dismiss, we are obligated to accept as true the allegations in IP's Amended Complaint. In 1996 and 1997, IP and AELLC entered negotiations regarding a proposed project (the "Project") whereby AELLC would construct, own, operate and maintain a facility at IP's mill in Androscoggin, Maine. The AELLC facility would produce electric power and steam for sale to IP and electric power for sale to others. During the negotiations, AELLC repeatedly assured IP of its access to certain natural gas fuel supplies that would make the price of the Project's electric power and steam economically advantageous to IP. As part of these assurances, AELLC furnished to IP copies of gas supply agreements it had entered with at least four gas suppliers. AELLC's assurances regarding the accessibility and prices of natural gas were "critical to – and, indeed, provided the rationale for – IP's decision to enter into agreements with respect to the Project." On July 31, 1997, AELLC and IP entered an Energy Services Agreement (the "ESA").

One of the gas supply agreements was forged between AELLC and Rio Alto Exploration, Ltd. ("Rio Alto") (the "Rio Alto GSA"). The Rio Alto GSA set forth certain conditions precedent to Rio Alto's obligation to perform. On March 26, 1998, AELLC sent a letter to Rio Alto admitting that AELLC had failed to satisfy certain conditions precedent to the Rio Alto GSA. AELLC did not apprise IP of this letter.

On April 7, 1998, Rio Alto notified AELLC that it was terminating the Rio Alto GSA because of AELLC's failure to satisfy the conditions precedent. Eventually AELLC challenged the termination before an arbitration panel. On November 18, 1998, the arbitration panel ruled that Rio Alto had validly terminated the Rio Alto GSA on May 8, 1998.

In the meantime, three other entities had executed a separate Operating Agreement effective May 15, 1998. Those three entities were Androscoggin Energy, Inc. ("AEI"), Polsky Energy Corporation of Maine, Inc. ("PEC"), and a wholly-owned subsidiary of IP. In section 2.1.5 of the Operating Agreement, AEI and PEC represented and warranted to the subsidiary that no legal proceedings were pending or threatened that would affect their ability to fulfill their commitments under the Operating Agreement or, if adversely determined, have a material adverse effect on their business or financial condition. In section 2.1.6, AEI and PEC further represented and warranted to the subsidiary that they were not in breach of any contracts except for

breaches that could not reasonably be expected to have a material adverse effect on their business or financial condition or their ability to fulfill their commitments under the Operating Agreement. These representations were false, according to IP.

Later that month, AELLC and IP entered into an Amended Energy Services Agreement (the "Amended ESA") that readopted and reaffirmed certain representations and warranties contained in the ESA as of the new effective date of May 29, 1998. The Amended ESA contained provisions identical to sections 2.1.5 and 2.1.6 of the Operating Agreement. The representations made in both provisions were false, according to IP.

Furthermore, AELLC represented and warranted in section 6.01(j) of the Amended ESA that "Seller will not terminate or materially modify the Beau Canada, Pro Mark, Alta Gas and Rio Alto natural gas supply agreements without Buyer's prior approval, which approval shall not be unreasonably withheld or delayed. Seller shall notify Buyer of any such modification or termination no later than fifteen (15) days before the proposed effective date of such modification or termination, and Buyer shall notify Seller of its approval or disapproval within seven (7) days thereafter. In the event that Buyer has not notified Seller by the end of such seven (7) day period, such modification shall be deemed to have been approved." Contrary to this provision, however, AELLC failed to provide timely notice to IP of Rio Alto's proposed and

actual termination of the Rio Alto GSA. AELLC did not apprise IP of Rio Alto's notice of termination until August 31, 1998, well after IP had taken numerous steps to assist AELLC in securing financing for the Project and closure of the construction loan.

Rio Alto's termination of the agreement has had a material adverse effect on the business and financial condition of AELLC and on AELLC's ability to fulfill its commitments under the Amended ESA. In turn, several unanticipated costs have been imposed upon IP. For instance, AELLC's steam cost billings to IP have included replacement gas costs exceeding the delivered Rio Alto contract prices. These excess costs are expected to continue through the remainder of the ten-year term of the terminated Rio Alto GSA. In addition, the termination of the Rio Alto contract has exposed IP to market risks that IP expected to eliminate through its participation in the Project.

In February 2001, we issued a Memorandum Opinion dismissing three of the four counts in IP's Complaint. IP has returned with an Amended Complaint containing claims of breach of contract against AELLC and negligent misrepresentation against AELLC, PEC and AEI. PEC and AEI now move for dismissal of the negligent misrepresentation claim against them. For its part, AELLC has filed a Counterclaim against IP alleging breach of contract. IP moves to compel arbitration of the Counterclaim. We treat each of these issues below.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests whether the plaintiff has properly stated a claim for which relief may be granted. Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations as well as all reasonable inferences. Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977). However, the court need "not strain to find inferences favorable to the plaintiffs" which are not apparent on the face of the complaint. Id. The court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)).

With respect to the motion to compel arbitration, whether an issue is referable to arbitration is a question of contract interpretation, for "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 (7th Cir. 1995) (quoting Schacht v. Beacon Ins. Co., 742 F.2d 386, 390 (7th Cir. 1994)). In interpreting the contract, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Matthews, 72 F.3d at 53. Thus, we can only deny a motion to arbitrate an issue if "it

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id. (quoting Schacht, 742 F.2d at 390).

## DISCUSSION

### 1. Motion to Dismiss

In February 2001, this Court issued a lengthy memorandum opinion dismissing three of IP's claims, leaving intact only the breach of contract claim against AELLC. In our discussion, we endeavored to distinguish the Energy Services Agreement from the Operating Agreement, as each was executed by different parties for different purposes. IP returned with an Amended Complaint realleging the breach of contract claim and presenting a refurbished negligent misrepresentation claim against AELLC, PEC and AEI. The negligent misrepresentation claim is based on both the Amended ESA and the Operating Agreement. PEC and AEI now move to dismiss the negligent misrepresentation claim against them.

In order to state a claim for negligent misrepresentation under Maine law, the plaintiff must allege that (1) the defendant was acting in the course of its business, profession or employment, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business transaction; (3) the plaintiff suffered pecuniary losses because of its justifiable reliance

on defendant's information; and (4) the defendant failed to exercise reasonable care in obtaining or communicating the information. See Chapman v. Rideout, 568 A.2d 829, 830 (adopting Restatement formulation of negligent misrepresentation); Restatement (Second) of Torts § 552(1) (1977).

PEC and AEI contend that IP has failed to allege that PEC and AEI supplied false information for the guidance of others in their business transaction. To avoid this result, IP points to the allegation that "AELLC, PEC, and AEI were negligent in making false representations and warranties to IP in the Amended Energy Services Agreement and additional false representations and warranties in the Operating Agreement in which AELLC, PEC, and AEI failed to disclose to IP AELLC's failure to satisfy conditions precedent in the Rio Alto Gas Supply Agreement and the constructive and actual termination of the Rio Alto Gas Supply Agreement." (Amd. Compl. ¶ 61.)

As Members of AELLC, PEC and AEI represented the following in the Operating Agreement:

> 2.1.5. [N]o suit, action or arbitration, or legal, administrative or other proceeding is pending or has been threatened against the Member that would affect the validity or enforceability of this Agreement or the ability of the Member to fulfill its commitments hereunder, or that would, if adversely determined, have a material adverse effect on the business or financial condition of the Member.

2.1.6. [Each Member warrants] [i]t is not in breach of, in default of, or in violation of, any applicable Law, or the provisions of any Authorization, or in breach of, in default under, or in violation of, any provision of any promissory note, indenture or any evidence of indebtedness or security therefor, lease, contract, license or other agreement or instrument by which it is bound, except for such breaches, defaults or violations which, individually or in the aggregate, could not reasonably be expected to have a material adverse effect on the business or financial condition of the Member or its ability to fulfill its commitments hereunder. . . .

(Operating Agreement §§ 2.1.5, 2.1.6.) Consistent with our Memorandum Opinion of February 2001, we construe section 2.1.5 to provide that (1) no proceeding is pending that would affect the validity of the Agreement, (2) nor has a proceeding been threatened against the Member that would affect the validity of the Agreement. IP argues that because this construction permitted its breach of contract claim against AELLC to proceed, it likewise supports its negligent misrepresentation claim against PEC and AEI. We disagree.

The Operating Agreement pertains to operation of and membership in AELLC, which is a limited liability company ("LLC"). (Operating Agreement, "Recitals," at 1.) Sections 2.1.5 and 2.1.6 require Members to make disclosures about any pending litigation against *themselves*. The companion provisions in the Amended ESA, by contrast, require AELLC to make disclosures about the LLC, not its Members. This distinction is critical to resolution of this issue. Any dispute between Rio Alto and AELLC did not affect the validity of the *Operating* Agreement, for that Agreement

established merely that IP's subsidiary would join the LLC. That the Rio Alto dispute was allegedly germane to the Amended ESA is plausible, given that the Amended ESA governs the sale and purchase of electric power and steam, and the Rio Alto gas was necessary in order to furnish such power and steam. However, the allegations do posit a link between the Rio Alto dispute and the addition of a new member to the LLC operational structure.

Without this critical link, it is not apparent that PEC and AEI made misrepresentations in the representations and warranties of the Operating Agreement. IP has not alleged that any actions were pending against PEC or AEI. The implication is that the Rio Alto arbitration would somehow be detrimental to the Operating Agreement. While it is plausible to us at this juncture that the Rio Alto arbitration could have affected the validity of the Amended ESA, it is implausible on the present allegations that the arbitration could have affected the validity of the Operation Agreement.

Likewise, IP has failed to allege that PEC and AEI made misrepresentations under section 2.1.6 of the Operating Agreement. That provision requires *each Member* to warrant that it is not in breach of, in default under, or in violation of any applicable legal obligation. Nowhere in the Amended Complaint does IP allege that PEC or AEI breached any of their obligations. Rather, IP alleges that AELLC

materially breached its contract with Rio Alto, thus bringing about the termination of that contract. AELLC's alleged breach is immaterial to the warranties exacted by section 2.1.6, however, because that provision inquires into the status of the Members of the LLC, not the LLC itself. It is a basic principle of corporate law that Members are distinguishable from the LLC corporate entity.

IP endeavors to resist this result. It argues in its papers that

> Polsky and AEI represented and warranted that no proceeding was pending that would affect their ability to fulfill their commitments under the Operating Agreement. Polsky and AEI made these representations and warranties at a time when AELLC was in the midst of a dispute with Rio Alto – a proceeding that subsequently affected Polsky's and AEI's ability to fulfill their commitments under the Agreement.

(Pl. Brief at 6.) In support of this latter contention, IP cites paragraphs 22, 23 and 24 of the Amended Complaint. Those paragraphs, however, do not refer to any commitments that PEC and AEI were obligated to fulfill under the Operating Agreement. Instead, they refer to *AELLC's* obligations under the *Amended ESA*. We reiterate a point that we endeavored to emphasize in our February 2001 Memorandum Opinion: the Amended ESA and the Operating Agreement are separate and distinct documents forged between discrete sets of parties. IP cannot rely on AELLC's representations and obligations in the Amended ESA to mount a case against PEC and AEI based on the Operating Agreement.

The Amended Complaint also alleges that "AELLC, Polsky, and AEI made negligent misrepresentations to IP in connection with the negotiation of the agreements relating to the Project, including but not limited to Michael Polsky's May 12, 1997 letter, which created a false and misleading impression concerning the availability and security of AELLC's gas supplies that was never corrected to reflect material subsequent developments unknown to IP despite a duty to do so." (Amd. Compl. ¶ 61.) This assertion has two flaws. First, the Amended Complaint never establishes who Michael Polsky is. Although Michael Polsky presumably has some relationship with the eponymous Defendant, it is not for us to make these assumptions. Rather, IP must craft pleadings that allege a relationship granting Michael Polsky authority to bind PEC.

Faced with the absence of affirmative misrepresentations, we turn to the issue of whether IP has alleged any omissions that are actionable under a theory of negligent misrepresentation. We note at the onset that the Amended Complaint focuses primarily on affirmative misrepresentations and refers only in passing to omissions. (Amd. Compl. ¶¶ 26, 61; compare with ¶ 64.) Even assuming that the Amended Complaint alleges omissions, Maine law requires the plaintiff to allege a fiduciary duty in order to recover. See Brae Asset Fund, L.P. v. Adam, 661 A.2d 1137, 1139 (Me. 1995). IP has not explicitly alleged the existence of a fiduciary duty between PEC, AEI and IP.

Under a very generous construction of the pleadings, we may accept IP's reference to the "relationships and agreements" among the parties as an alleged fiduciary relationship. (An even stronger argument, one that IP did not raise, is that fiduciary duties generally flow among members of an LLC.[1]) But that, by itself, is not enough, since IP was not a member of the LLC. Thus it is not at all apparent to us that fiduciary duties would flow from PEC and AEI (members of the LLC) to IP (the alleged parent company of a co-member of the LLC). IP has not pressed this point. Given the tenuousness of such a claim, we find the negligent misrepresentation claim by IP unsupportable.

With that conclusion, we are left with the same result as our previous Memorandum Opinion. We remain unpersuaded that IP can proceed with its negligent misrepresentation based on negotiations surrounding a contract to which it was not a party. Accordingly, Count II as it pertains to PEC and AEI is dismissed.

---

[1] IP's papers refer to a "special relationship" among PEC, AEI and the subsidiary and characterizes the parties as "joint venturers," but never does IP resort to the most obvious definition of those parties: co-Members of a limited liability company. Our independent review of the case law revealed that several states have recognized fiduciary duties among co-Members.

## 2. Motion to Compel Arbitration

IP has moved to compel arbitration of AELLC's Counterclaim. The Counterclaim alleges breach of contract by IP for failure to pay certain amounts due to AELLC under the ESA by wrongfully withholding portions of the amounts due. (Counterclaim ¶ 1.) Under the Amended ESA, IP agreed to pay for the steam pursuant to a set formula. (Id. ¶ 8.) Part of the formula included a term called "AWFP," which the agreement defined as "the average weighted delivered price of Tier 1 Natural Gas delivered to the Project during each hour (including shrinkage costs), expressed in dollars per MMBtus (higher heating value)." (Id. ¶ 9.)

On December 18, 2000, IP informed AELLC that it was reducing its remittance under AELLC's November 2000 bill by $53,568.19 because it had overpaid AELLC's October 2000 bill. (Id. ¶ 17.) IP claimed it had overpaid because less than 32,000 MMBtus of Tier 1 Natural Gas was delivered to the Project on 17 days in October. Thus, IP reasoned that the AWFP portion of the formula reflected on the bill was too high. (Id.) AELLC challenges IP's interpretation of the formula.

IP believes that the Counterclaim must be arbitrated pursuant to the express terms of the Amended ESA's arbitration clause. AELLC disagrees, arguing that IP has waived its opportunity to compel arbitration of the Counterclaim by pressing its own arbitrable breach of contract claim in federal court.

In order to resolve this dispute, we must ascertain first whether IP's breach of contract claim falls within the scope of the arbitration clause of the Amended ESA. According to the arbitration clause, "any Dispute related to payments due under this Agreement . . . shall be submitted to arbitration. . . ." (Amd. ESA § 10.06(d)(i).) In order to determine whether IP's breach of contract claim is a "dispute related to payments due," we must examine the contours of the claim. The First Amended Complaint alleges that AELLC breached the Amended ESA by (1) not disclosing its failure to satisfy conditions precedent to the Rio Alto gas supply agreement, as well as the termination of that agreement; (2) making false representations and warranties in sections 2.02(e) and (f) of the Amended ESA; (3) failing to provide IP with timely notice of the termination of the Rio Alto agreement in violation of section 6.01(j) of the Amended ESA; and (4) constructively terminating and/or allowing termination of the Rio Alto agreement and purporting to secure replacement gas volumes in violation of section 6.01(j) of the Amended ESA. (Amd. Compl. ¶¶ 51-53.) At bottom, these claims are about false representations and warranties. Such an action does not magically transform into a dispute about payments due merely because we must rely on invoices to calculate IP's expectation damages.

Furthermore, even if IP's breach of contract claim were within the scope of the arbitration clause, we would nonetheless have to determine whether IP waived the right to arbitrate its claims by proceeding in federal court, and whether this waiver extends

to AELLC's counterclaims. To assist courts in determining whether a party has waived its right to arbitrate a counterclaim, the Seventh Circuit has adopted a "totality of the circumstances" test. See Midwest Window Systems, Inc. v. Amcor Indus., Inc., 630 F.2d 535, 537 (7th Cir. 1980). Among those circumstances we consider are whether the claims are separate and distinct from each other, and whether the parties have acted inconsistently with their arbitration right. See id.; Design Benefit Plans, Inc. v. Enright, 940 F. Supp. 200, 203 (W.D. Ill. 1996).

In the instant case, IP's claim and AELLC's counterclaim are separate and distinct from each other. The subject of IP's claim is AELLC's allegedly false warranties and representations in the Amended ESA resulting from its breach of the Rio Alto gas agreement. To prove the claim, IP will rely on sections 2.1.5, 2.1.6 and 6.01(j) of the Amended ESA. The subject of the Counterclaim, by contrast, is calculation of the payment formula. To prove its claim, AELLC will rely on the formula that appears in Exhibit 4.03 of the Amended ESA. Specifically, the dispute is over what number to use for the weighted average delivered cost. IP believes that if less than 32,000 MMBtu of Tier 1 Natural Gas is delivered on a given day, that lesser number should be plugged into the formula. AELLC disagrees. Essentially this dispute will turn whether IP must pay for more steam than is actually delivered on any given day. IP's breach of contract claim, by contrast, will turn on the timing of developments in AELLC's arbitration with Rio Alto and the disclosures that were or

were not made to IP. The claims rely on separate provisions of the Amended ESA. We find little if any overlap between the claims.

Turning from the substance of the parties' disputes to the nature of their conduct, we find nothing to suggest that IP's actions waived their right to compel arbitration under the express provision of the Amended ESA. Upon receiving AELLC's Counterclaim, IP quickly moved to compel arbitration. It did not answer the Counterclaim.Consequently, the totality of the circumstances lead us to conclude that AELLC's Counterclaim must be submitted to arbitration. We therefore grant IP's Motion to Compel Arbitration and Stay AELLC's Counterclaim.

## CONCLUSION

For the foregoing reasons, we grant the Motion to Dismiss of Defendants Polsky Energy Corporation of Maine, Inc. and Androscoggin Energy, Inc. Accordingly, those Defendants are dismissed from the case. In addition, we grant Counterplaintiff IP's Motion to Compel Arbitation and Stay AELLC's Counterclaim.

Charles P. Kocoras
United States District Judg

Dated: _____May 9, 2001_____