# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6215 | **DATE** | 6/19/2003 |
| **CASE TITLE** | Intl Paper Co vs. Androscoggin Energy | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Plaintiff's motion (Doc 138-1) to dismiss Counts I and II of defendant's Amended Counterclaim is granted. Counts I and II are dismissed without prejudice. AELLC may bring breach of contract claims based on the same underlying facts without running afoul of res judicata, but we do not at this time grant AELLC leave to amend its Amended Counterclaim. Pending motion (Doc 141-1) for summary judgment on said counts is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 0 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 147 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 JUN 19 PM 2:37 | JUN 2 0 2003 date mailed notice | |
| SCT | courtroom deputy's initials | OT 03-0374 Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL PAPER COMPANY, a New )
York corporation, )
)
                         Plaintiff, )
)
      vs. )      00 C 6215
)
ANDROSCOGGIN ENERGY LLC, a Delaware )
Limited Liability Corporation, )
)
                     Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff International Paper Company's ("IP") motion to dismiss Counts I and II of Defendant Androscoggin Energy LLC's ("AELLC") Amended Counterclaim. For the reasons set forth below, we grant the motion.

### BACKGROUND

IP has a mill in Androscoggin, Maine, that demands a source of steam for it to operate. In 1996 and 1997 AELLC and IP negotiated a project (the "Project") in which AELLC would construct, own, operate, and maintain a facility at IP's mill for the purpose of producing steam for sale to IP and electric power for sale to others. During

the negotiations, AELLC informed IP that it had ten-year contracts with four different natural gas suppliers under which natural gas would be available at fixed prices with fixed escalations. One of these contracts, the Rio Alto Contract, was entered into between AELLC and Rio Alto Exploration, Ltd. ("Rio Alto"). The Rio Alto Contract provided AELLC with approximately one-third of the fixed price natural gas to be used for the Project. The price of gas under the Rio Alto Contract was relatively low.

On May 29, 1998, AELLC and IP executed Amendment No.1 to the ESA ("Amended ESA"), which readopted the ESA as of that date. Prior to executing the Amended ESA, AELLC breached the Rio Alto Contract. Despite being in breach of the Rio Alto Contract with Rio Alto, AELLC warranted to IP in the Amended ESA that it was not in breach of any material agreements it had with third parties. (Amended ESA § 2.02(f).) On IP's motion for partial summary judgment, we held that AELLC breached this warranty. (Dkt. No. 96.) Although the issue of damages remains to be tried, it has always been IP's position that AELLC's breach caused (and continues to cause) IP millions of dollars in damages in flow-through costs of the steam IP purchases from AELLC. According to IP, the flow-through costs are substantially higher due to AELLC having to cover for the gas that should have been available at lower, fixed prices under the Rio Alto Contract with higher, market-priced gas.

Despite the ongoing litigation and AELLC having been declared in breach of the Amended ESA, the parties continue to operate under the Amended ESA. AELLC continues to provide steam to IP, and IP continues to purchase the steam under the terms of the Amended ESA. Each month, AELLC bills IP for the steam. In April 2003, IP deducted over $2 million from its steam payment to AELLC for steam delivered the previous month. IP deducted the money for three reasons:

(1) $1,280,150.95 for attorney fees and expenses allegedly incurred by IP during the litigation thus far;

(2) $799,000 for IP's estimate of the portion of a refund AELLC received from Portland National Gas Transmission System ("PNGTS") that should have flown-through to IP; and

(3) $72,871.99 for a disputed portion of the steam payment.

Based on these deductions, AELLC amended its counterclaim to add claims for equitable relief. We previously granted AELLC a preliminary injunction, requiring IP to remit the roughly $1.28 million in attorney's fees and expenses. (Dkt. No. 132.) IP now moves to dismiss the equitable claims from the Amended Counterclaim.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002) (citing *Beanstalk Group, Inc. v. AM General Corp.,* 283 F.3d 856, 863 (7th Cir. 2002)). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). With these principles in mind, we now address the motion before us.

## DISCUSSION

AELLC's Amended Counterclaim contains three counts. Count I is for declaratory judgment under the Amended ESA. Count II is derivative of Count I and is for injunctive relief. Count III is for breach of contract of the Amended ESA.

Count III of the Amended Counterclaim is a reassertion of Count I of AELLC's original Counterclaim. In addition to moving to dismiss Counts I and II, IP moves to strike Count III as redundant. Procedurally, AELLC's Amended Counterclaim replaces (not supplements) its original Counterclaim. Thus, there is no redundancy in Count III. As we previously granted IP's motion to compel arbitration and stay Count I of AELLC's original Counterclaim, (Dkt. No. 29), we note that that ruling stands and applies to Count III of the Amended Counterclaim.

Counts I and II each ask for three variations of relief. Count I asks for a declaratory judgment:

(1) declaring that IP has no right to set-off from any steam payments to AELLC monies allegedly due IP from the PNGTS refund;
(2) declaring that IP has no right to set-off from any steam payments to AELLC attorney fees and expenses incurred in connection with this litigation; and
(3) declaring that IP has no right to set-off from any steam payments to AELLC any amounts.

(Amended Counterclaim at 10). Count II asks for injunctive relief. Specifically requested are:

(1) a preliminary and permanent injunction prohibiting IP from setting-off or withholding from steam payments to AELLC monies it alleges it is due from the PNGTS refund;
(2) preliminary and permanent injunction prohibiting IP from setting-off or withholding from steam payments to AELLC attorney fees and expenses it has allegedly incurred or will incur in connection with this litigation; and
(3) preliminary and permanent injunction requiring IP to immediately remit to AELLC the total amount of $2,152,022.80 set-off or withheld from its March steam payment.

(Amended Counterclaim at 11.)

IP deducted the attorney's fees and expenses pursuant to section 10.04(a) of the Amended ESA, which provides for the recovery of such fees and expenses by a successful litigant. Although IP has already succeeded in establishing AELLC's breach of the Amended ESA, the issue of damages remains. Because no final judgment

has been reached (which very well may include an award of attorney's fees and expenses), IP currently is not entitled to recover or withhold its attorney's fees and expenses. Additionally, section 4.05(c) of the Amended ESA generally precludes any such deductions or set-offs. Because we found no contractual right to set off the attorney's fees and expenses (indeed section 4.05(c) expressly prohibits such set-offs), we required IP to remit the roughly $1.28 million in a preliminary injunction.

The PNGTS refund is a wholly separate issue. The PNGTS refund is a refund that AELLC received from PNGTS due to PNGTS's previous overcharging of AELLC for natural gas. IP, feeling entitled to a portion of this refund due to the flow-through nature of its costs under the Amended ESA and frustrated with AELLC's delay in passing on any such portion of the refund, set off from its steam payment $799,000 representing the portion to which it estimated it was entitled.

The last amount, $72,871.99, represents a disputed portion of the March steam bill.

AELLC amended its Counterclaim to ask for declaratory judgment that none of these set-offs are permissible under the Amended ESA and for injunctive relief against such set-offs. IP moves to dismiss the declaratory judgment claims in Count I because it maintains they are really just breach of contract claims posing as equitable claims for

declaratory judgment. IP further moves to dismiss the injunctive claims in Count II as derivative of Count I.

It is no mystery why AELLC amended its Counterclaim to include declaratory judgment claims rather than breach of contract claims. A breach of contract claim is a legal claim whereas a declaratory judgment claim is an equitable claim. Without a valid claim for equitable relief, a court should not entertain a preliminary injunction. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002).

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies in federal court even when it sits in diversity. *Household Fin. Servs., v. Northern Trade Mortgage*, 1999 WL 782072, at *2 (N.D. Ill. Sept. 27, 1999). AELLC correctly states that "[t]he purpose of the [Declaratory Judgment] Act is to enable parties to understand their rights and liabilities so that they can adjust their future action to avoid accruing avoidable damages." (AELLC Opp. at 6-7 (citing *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994)); *Household Fin. Servs.*, 1999 WL 782072 at *2; *see also Certified Grocers Midwest v. New York Life Ins.*, 814 F. Supp. 34 (N.D. Ill. 1992) (declaratory judgment allows a plaintiff to clarify uncertain contractual rights prior to exercising them). AELLC's claims, however, do not further the purpose of the Act. AELLC does not seek a declaratory judgment that would clarify its rights and obligations under the Amended ESA in order to avoid accruing

avoidable damages=; it is seeking a declaratory judgment that would clarify *IP's* rights and obligations so that *IP* could avoid accruing avoidable damages. It is IP, not AELLC, that is allegedly accruing damages by making these set-offs. If IP wanted to know whether such set-offs were contractually permitted before taking them (and potentially exposing itself to liability), it could have instituted a declaratory judgment suit. AELLC, however, cannot bring a declaratory judgment suit on behalf of its adversary. To the extent IP has taken action in violation of the Amended ESA, AELLC's cause of action is for breach of contract. *See Household Fin. Servs.*, 1999 WL 782072 at *3 (dismissing declaratory judgment suit incorrectly couched as a breach of contract action). To the extent that AELLC believes IP will take further future action in violation of the Amended ESA, AELLC has no cause of action unless and until IP takes such action. In essence, a declaratory judgment suit allows a party to ask the court if it can do something without incurring liability. It does not permit a party to ask if an adversary can do something without incurring liability.

## CONCLUSION

Based on the foregoing analysis, we grant IP's motion to dismiss. Counts I and II are dismissed without prejudice. AELLC may bring breach of contract claims based on the same underlying facts without running afoul of *res judicata*, but we do not at this time grant AELLC leave to amend its Amended Counterclaim.

　　　　　　　　　　　　　　　　　　Charles P. Kocoras
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated: June 19, 2003