# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6215 | **DATE** | 4/22/2004 |
| **CASE TITLE** | Intl Paper Co. vs. Androscoggin Energy et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The parties' motions in limine are granted in part and denied in part. (Docs 186-1 through 199-1, and 201-1 through 208-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 5 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | 234 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 APR 22 PM 4:23 | 4/22/2004 | |
| | | | date mailed notice | |
| SCT | courtroom deputy's initials | | SCT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY, a New York Corporation,<br>　　　　　　　　Plaintiff,<br>vs.<br>ANDROSCOGGIN ENERGY LLC, a Delaware Limited Liability Company; POLSKY ENERGY CORPORATION OF MAINE, an Illinois Corporation; and ANDROSCOGGIN ENERGY, INC., an Illinois Corporation;<br>　　　　　　　　Defendants.<br>------------------------------------------------------------<br>ANDROSCOGGIN ENERGY LLC,<br>　　　　　　　　Counter-Claimant<br>vs.<br>INTERNATIONAL PAPER COMPANY,<br>　　　　　　　　Counter-Defendant. | 00 C 6215<br><br>DOCKETED<br>APR 2 3 2004 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

Before the court are eight motions *in limine* brought by Plaintiff International Paper Co. ("IP") and thirteen motions *in limine* brought by Defendant Androscoggin Energy LLC ("AE"). For the reasons set forth below, the parties' motions are granted in part and denied in part.

234

## BACKGROUND

This case arises out of AE's breach of a steam generation and supply contract entered into with IP. The facts of this case are detailed in our previous decisions in International Paper Co. v. Androscoggin Energy LLC, 2002 WL 31507176 (N.D. Ill. 2002); 2003 WL 22955995 (N.D. Ill. 2003). Discovery has been completed and the cased is poised for trial. The parties have filed various motions *in limine.*

## LEGAL STANDARD

A federal district court's authority to manage trials includes the power to exclude evidence pursuant to motions *in limine.* Falk v. Kimberly Services, Inc., 1997 WL 201568, *1 (N.D. Ill. 1997). However, a court has the power to exclude evidence *in limine* only when that evidence is clearly inadmissible on all potential grounds. Hawthorne Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). A district court should be mindful that some proposed evidentiary submissions cannot be accurately evaluated in a pretrial context via a motion *in limine.* Tzoumis v. Tempel Steel Co., 168 F. Supp. 2d 871, 873 (N.D. Ill. 2001). For this reason, certain evidentiary rulings should be deferred to trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. Hawthorne Partners at 1400. Denial of a motion *in limine* does not automatically mean that all evidence contemplated by the motion will be admitted at trial. Id. at 1401. Instead, the

court will entertain objections to individual proffers as they occur at trial. Id. In any event "the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." Luce v. U.S., 469 U.S. 38, 41-42 (1984).

## DISCUSSION

IP has filed eight motions *in limine*, while AE has filed thirteen.

**IP's Motions**

IP's first motion seeks to exclude any evidence, argument, or instruction regarding AE's anticipatory repudiation theory. Citing case law from the Ninth Circuit, IP argues that, because AE breached the AESA in May 1998, AE's December 1, 1998, communication about the loss of the Rio Alto gas contract could not constitute an anticipatory breach "as a matter of law." AE responds that it does not intend to argue that it anticipatorily breached the AESA on December 1, 1998, but rather that the date is significant for damages purposes as the date IP conclusively learned that the AESA had been breached. AE suggests that because IP became aware of the AE's loss of the Rio Alto contract on December 1, 1998, a repudiation of the AESA might be deemed to have occurred on that date. We accept AE's statement that it does not intend to rely on any anticipatory repudiation theory at trial, rendering IP's motion moot.

IP's second motion seeks to bar the opinion and testimony of AE's expert Jan van Egteren. AE plans to have Mr. van Egteren opine on the availability of natural gas from other suppliers that could have been obtained in response to the loss of the Rio Alto contract. Because we find that this information is potentially relevant to the issue of damages, including any duty on the part of IP to mitigate, this motion is denied.

IP's third motion seeks to exclude evidence concerning the question whether AE actually or intentionally terminated the Rio Alto contract. The undisputed fact found previously by the court is that Rio Alto actually terminated its contract with AE. The issue to be tried is whether AE constructively terminated its contract with Rio Alto, not whether AE actually or intentionally terminated the Rio Alto contract. Constructive termination by AE is central to IP's breach claim as to Section 6.01(j); the jury should be able to hear that Rio Alto, not AE, actually terminated the contract. Since the jury will decide whether AE had constructively terminated its contract with Rio Alto prior to the AESA, the fact that Rio Alto actually terminated the contract will be relevant in that it will help provide the jury a context for answering the constructive termination question.

IP's fourth motion seeks to exclude the testimony of James Shield (an AE manager who executed the AESA) and Patrick Scully (an AE attorney who counseled AE on its contracts with IP). Because Mr. Shield negotiated and executed the AESA,

the contract at issue, his testimony is potentially relevant to the case. In addition, he is listed as a "May Call" witness by IP in the Final Pretrial Order. As for Mr. Scully, IP has included a letter he authored as an exhibit for trial. Pl. Ex. 74. Since IP may potentially introduce this letter at trial, we find that it is premature to prohibit his testimony. Accordingly, IP's motion as to Mr. Shield and Mr. Scully is denied.

IP's fifth motion seeks to exclude the testimony, report, and opinion of AE's expert witness Professor Ann Lousin. IP wants to bar Professor Lousin's testimony because it will concern AE's theory of anticipatory repudiation. AE responds that Professor Lousin will offer testimony on subjects other than anticipatory repudiation. On that basis, we will not bar Professor Lousin from testifying. Whether she will offer relevant evidence is better decided at trial.

IP's sixth motion seeks to exclude evidence, argument, and instruction regarding causation, and also asks us to deem the element of causation established in IP's favor as a matter of law. However, we have already stated that the causation element in IP's breach of contract claim has yet to be determined, that genuine issues of fact exist concerning the causal connection between AE's breach and IP's increased steam costs, and that the causation question is one for the jury. Mem. Op. Dec. 11, 2003, at 8-9. Because the question of causation is unsettled and is to be answered by the jury, this motion is denied.

IP's seventh motion seeks to exclude any evidence, argument, and instruction concerning AE's affirmative defense of waiver. Motions *in limine* are generally not proper vehicles for determining the validity of affirmative defenses, as such questions require the resolution of factual issues. <u>Miles v. Barrington Motors Sales, Inc.</u>, 2003 WL 22889373, *2 (N.D. Ill. 2003) (citing <u>U.S. v. Tokash</u>, 282 F.3d 962, 967 (7th Cir. 2003)). IP's motion is, accordingly, denied.

IP's eighth motion seeks to bar AE from offering evidence, argument, and instruction, concerning AE's affirmative defense of failure to mitigate. However, as we have already determined that as a matter of law AE is not precluded from raising the mitigation defense and that whether a party should have mitigated damages is a jury question (Mem. Op. Dec. 11, 2003), this motion is denied.

**AE's Motions**

AE's first motion seeks to bar introduction of its damages claim from its unsuccessful arbitration action against its former counsel, Thelen Reid & Priest, the firm that drafted its contract with Rio Alto. In particular, AE seeks to bar the introduction of a report from John Brickhill, that AE relied on for its damages calculations in its claim against Thelen Reid. AE claims that damages reports for the arbitration action against its former attorneys involve different issues of causation and damages, and were formulated in early 2001. AE argues these reports would be

irrelevant or prejudicial in the present litigation. IP responds that the reports in question, which address the availability and cost of replacing natural gas at the time the Rio Alto contract was lost, are relevant to issues at trial including causation, damages, and mitigation. We agree that some of the information in Brickhill's report could be potentially relevant to the above issues and will therefore deny AE's blanket motion. Specific objections to material surrounding AE's arbitration and Brickhill's report should be raised at trial.

AE's second motion seeks to bar the opinion and testimony of Harvey S. Rosen, Ph.D. Dr. Rosen is an economist who IP proposes to testify concerning its costs and expenses incurred in the exercise of its remedy, in particular prosecuting this litigation. AE bases its motion on three grounds: (1) IP's legal expenses are not relevant until a jury returns a verdict in this trial; (2) IP has not produced its legal bills that Dr. Rosen relies on to determine IP's expenses; and (3) Dr. Rosen is not qualified to offer expert testimony under F.R.E. 702. IP objects that Dr. Rosen is prepared to offer expert testimony concerning IP's internal costs relating to this action, to which AE does not advance discovery-related objections. Since internal costs are a legitimate component of the damages that IP may seek to recover and because of the broad range of expert opinion allowed under F.R.E. 702, AE's motion is denied. Recovery for and

reasonableness of attorneys' fees will be determined by the court upon the return of a jury verdict in favor of IP.

AE's third motion seeks to bar IP's experts from opining on the issue of causation. AE argues that two of IP's experts, one an energy consultant with a background in finance and economics and the other a law professor who studies contracts and the UCC, will not be able to assist the jury in determining the factual question of causation. At this point we are unable to conclude that either expert is unqualified to offer any potential testimony as to causation, and would be better positioned to answer AE's objection in the fuller context of trial. AE's motion is thus denied.

AE's fourth motion seeks to bar certain testimony by Norman Davis, an "Energy Purchasing Manager" for IP. At his deposition, Mr. Davis testified that he had prepared "market strip" analysis as well as a Power Point presentation concerning the impact of AE's loss of the Rio Alto contract. Citing the attorney-client privilege, Davis refused to answer questions relating to the result of his analysis and presentation. As IP does not object to precluding Davis' testimony concerning these two subjects, the motion is granted specifically as to the contents of the market strip analysis and the Power Point presentation.

AE's fifth motion seeks to exclude certain testimony by Michael Chapman, IP's Senior Counsel for Energy and Logistics, who was a legal advisor to the IP team that negotiated its project with AE. At his deposition, Mr. Chapman cited the attorney-client privilege for not answering certain questions concerning internal IP discussions or communications relating to its energy project with AE. IP has also withheld as privileged over 100 documents either authored by or written to Mr. Chapman. AE contends that because he has asserted privilege to questions relating to the following subjects, he should be precluded from testifying about them at trial: (1) IP's rationale for entering into the ESA and ASEA; (2) the impact to IP and IP's internal response stemming from the loss of the Rio Alto contract; (3) the timing and contents of IP's Notice of Default; and (4) IP's mitigation of damages. AE also suggests that because Chapman was "merely legal advisor to IP's decision makers" his testimony would be irrelevant, speculative, and prejudicial. We find that AE's motion is overly board. Because Chapman did answer many questions concerning the above subjects, he could potentially offer testimony concerning them that would be relevant and admissible. If AE wishes to advance more specific objections to particular topics of Chapman's testimony, they will be entertained at trial.

AE's sixth motion seeks to exclude evidence of assurances, representations, and explanations not written in the ESA and AESA that were made by AE during the

negotiations of the agreements. AE asserts that because of integration clauses contained in the ESA and AESA, statements made during their negotiations by AE should be precluded as irrelevant and prejudicial.[1] IP counters that testimony regarding pre-contract negotiations is admissible because the subjects of such negotiations are relevant (1) to show the foreseeability of IP's damages, (2) to rebut IP's purported defense to its Section 6.01(j) claim, and (3) because of the potential ambiguity of certain contract terms.

Maine law clearly favors the enforcement of integration clauses. It holds that the "parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." Handy Boat Service, Inc. v. Professional Services, Inc., 771 A.2d 1306, 1308-09 (Me. 1998). Where the language of a contract "is unambiguous with respect to the existence and scope of integration, no extrinsic evidence concerning integration may be presented by parties or considered by the court." Id. at 1309. Additionally, a party cannot rely on representations made during

---

[1] ESA § 12.16 reads: "There are no understandings between the Parties as to the subject of this Agreement other than as set forth herein, and this Agreement represents the entire understanding between the Parties in relation to the subject matter hereof. This Agreement supersedes any and all previous agreements, arrangements or discussions between the Parties (whether written or oral) in respect of the subject matter hereof, all of which are hereby abrogated and withdrawn."

the negotiation of a contract if the contract includes an integration clause. Stanley v. Miro, 540 A.2d 1123 (Me. 1988). We find that integration clauses of the ESA and AESA unambiguously mandate the exclusion of representations made during the contracts' negotiations. Likewise, neither of the parties have argued, nor have we yet to determine, that any language in the AESA is ambiguous. As such, any request to include parol evidence would be premature. We therefore grant AE's motion. If AE's evidence raises matters to which such representations are responsive, they may be raised at trial.

AE's seventh motion seeks to prohibit the introduction of a Credit Agreement between AE and its lenders, made in June 1998, that disclosed AE's dispute with Rio Alto. AE contends that this document contains information that is irrelevant to IP's two remaining claims. The Credit Agreement contains AE's acknowledgment that Rio Alto was entitled to terminate its contract with AE. For this reason, IP contends that the Credit Agreement constitutes evidence that is relevant to (1) the foreseeability element of the causation issue in that AE knew that higher gas prices could ensue from the Rio Alto contract's loss, and (2) AE's mitigation defense, namely that AE should have acted reasonably to seek replacement gas. We agree and find that because the Credit Agreement provides a date when AE was aware of the Rio Alto contract's

demise, it may be used for the purposes suggested by IP. The motion is accordingly denied.

AE's eighth motion seeks to bar IP from introducing into evidence transcripts from AE's arbitration with its former counsel, Thelen Reid & Priest. AE objects that the 1,600 page transcript is too voluminous and was not proffered in accordance with the pretrial order. IP counters that it has properly identified the specific portions of the arbitration transcripts that it intends to introduce at trial, making AE's general request as to the entirety of the transcripts unnecessary. Because it appears that IP plans to use only limited portions of the arbitration transcript, which AE concedes have been identified in the Pretrial Order, we will deny AE's motion as overly board and entertain specific objections as they arise.

AE's ninth motion seeks to bar IP from asserting or arguing that AE's breach of AESA Section 2.02(f) was intentional. AE argues that because we have already determined that AE breached Section 2.02(f), any argument that AE's knowingly or intentionally provided a false representation in the AESA would be irrelevant or prejudicial. IP counters that AE's interest in keeping its breach of the AESA from IP is relevant in determining when IP first learned of the breach, which relates to arguments concerning waiver, mitigation, causation, and damages. IP also asserts that whether AE's misrepresentation was intentional is relevant to the credibility of AE's

witnesses. AE claims that its intentions in May of 1998 are irrelevant to whether IP became aware of the breach in December 1998, as AE alleges. However, AE's alleged motivation to keep IP unaware of the Rio Alto contract's loss is potentially relevant to IP's contention that AE did not disclose the contract's loss until well after December 1998. Also, IP may appropriately ask AE employees or agents who executed the AESA if they knew that the Rio Alto contract had been lost at the time of the AESA's signing, as this information could impact such witnesses' credibility. The motion is accordingly denied.

AE's tenth motion seeks to bar evidence relating to the terms of the stock sale between Polsky Energy Corporation and Calpine, and Michael Polsky's separation agreement with Calpine. At the time this litigation ensued, Polsky Energy Corp. was a member of AE. In the course of the litigation, Calpine purchased the stock of Polsky Energy Corp. and Michael Polsky became a member of Calpine's board. Later Polsky entered into a separation agreement with Calpine and began his own company, Invenergy. IP seeks to introduce as evidence a provision of Mr. Polsky's separation agreement where Calpine released him from any claims resulting from AE's dispute with IP. IP also seeks to introduce a schedule from the stock purchase that contains a disclosure of the lawsuit. AE claims that this evidence is irrelevant and prejudicial. However, the stock sale agreement contains language that indicates that IP continued

to make payments to AE though July 2000. For this reason, the agreement is potentially relevant to the issue of damages, particularly set-off arguments, and the motion is accordingly denied.

AE's eleventh motion seeks to bar evidence relating to its offer to IP to participate in any recovery achieved in AE's arbitration with its former counsel, Thelen Reid & Priest. AE states that Thelen Reid's alleged negligence in its representation of AE relating to the Rio Alto contract may have indirectly injured IP, which prompted AE to offer IP to participate in any recovery from Thelen Reid. AE argues that its offer to IP is not relevant to the present litigation, as the offer itself has no bearing on any issues remaining for trial. Also, AE contends that because the offer related to Thelen Reid's purported negligence, it could prejudice and confuse the jury, which would be unable to distinguish AE's two distinct disputes with IP and Thelen Reid. IP objects as it avers that the March 2000 offer was the first time that it learned of AE's breach of the AESA (as opposed to AE's contention of December 1998). Because the date that IP became aware of AE's breach is a crucial question in determining damages, we find that the relevance of AE's offer is not substantially outweighed by its prejudicial effect. The motion is denied.

AE's twelfth motion seeks to bar certain testimony of James Diemer, a fuel consultant who was retained by one of AE's lenders to evaluate the fuel supply for the

AE-IP project. At his deposition Mr. Diemer gave testimony regarding his understanding of the ESA between AE and IP. AE contends that Mr. Diemer's testimony concerning his views of the rights and obligations of the parties under the ESA is not relevant to the remaining issues to be tried. IP wants to introduce evidence that Diemer advised AE to obtain IP's consent to the termination of the Rio Alto contract. IP suggests that Diemer's testimony is relevant to show (1) that AE never obtained IP's consent to terminate the Rio Alto contract in the Spring of 1998; (2) that AE's mitigation defense is based on a false premise; and (3) AE's intent to conceal the Rio Alto contract's loss from IP. We agree with AE's contention that the interpretation of an unambiguous contract is a question of law for the court, Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 517 (Me. 2000), and that Diemer's beliefs as to AE's contractual obligations will be irrelevant to the jury as to the question of breach. Testimony as to his legal understanding of the contract terms will be precluded. However, because Diemer's November 2, 1998, advice that AE should inform IP of the Rio Alto contract's loss could demonstrate IP's lack of awareness of the loss at that time, his testimony could be relevant as to the issue of mitigation, particularly whether IP acted reasonably. The motion is thus denied.

AE's thirteenth motion seeks to bar IP's expert witness Matthew O'Loughlin, an energy consultant with a background in finance and economics, from testifying at

trial. AE argues that under the UCC and Seventh Circuit case law, market-price damages, such as the ones sought by IP, are measured based on market prices at the time the non-breaching party learns of the breach. AE contends that for this reason, O'Loughlin's testimony that damages should be measured based on IP's actual cost of purchasing replacement steam will not assist the jury under F.R.E. 702. Because we have yet to determine the proper method for measuring IP's damages' this motion is denied as premature.

## CONCLUSION

Based on the above analysis, the parties' motions *in limine* are granted in part and denied in part.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: 4/22/04