UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL PAPER COMPANY, )
a New York corporation, )
 )
                Plaintiff, )
 )
  vs. )      00 C 6215
 )
ANDROSCOGGIN ENERGY LLC, )
Delaware limited liability corporation, )
 )
                Defendant. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on three post-trial motions: 1) Defendant Adroscoggin Energy LLC's ("AE") motion for judgment as a matter of law, or in the alternative, a remittitur or a new trial; 2) Plaintiff International Paper Company's ("IP") motion for an order awarding attorneys' fees, costs and expenses, and 3) IP's motion for an award of prejudgment interest. For the reasons set forth below, AE's motion is denied, IP's motion for award of attorneys' fees, costs, and expenses is denied in part and granted in part, and IP's motion for prejudgment interest is granted.

## BACKGROUND

The factual and procedural history of this case, leading up to the jury's verdict, is extensive and set forth in previously rendered opinions, so we only briefly recap the highlights here.

IP has a mill in Androscoggin, Maine, that demands a source of electric power and steam for its operation. In 1996 and 1997 AE and IP negotiated a project (the "Project") in which AE would construct, own, operate, and maintain a facility at IP's mill for the purpose of producing electric power and steam for sale to IP and electric power for sale to others. During the negotiations, AE informed IP that it had ten-year contracts, copies of which were provided by AE to IP, with four different natural gas suppliers under which natural gas would be available at fixed prices with fixed escalations. One of these contracts, the Rio Alto Contract ("RAC"), was entered into between AE and Rio Alto Exploration, Ltd. ("Rio Alto"). The RAC provided AE with approximately one-third of the fixed priced natural gas to be used for the Project. The price of the gas was relatively low.

On July 31, 1997, AE and IP entered into an Energy Services Agreement (the "ESA") under which AE would provide steam to IP for a period of twenty years. The price of the steam would be based, at least in part, on the average price of the quantity

of the natural gas delivered pursuant to AE's fixed price, fixed escalation, and the contracts with the four natural gas suppliers.

On March 26, 1998, AE sent a letter to Rio Alto acknowledging that it had failed to satisfy certain conditions precedent to the RAC and requesting an extension of time in which to comply. Rio Alto responded to the letter on April 7, 1998, stating that because of AE's noncompliance, Rio Alto was giving AE thirty days notice that it would terminate the RAC on May 8, 1998. At that time, however, Rio Alto informed AE that it could avoid termination of the RAC by exercising its contractual right to waive all remaining conditions precedent prior to May 8, 1998. AE initiated an arbitration proceeding against Rio Alto to enforce the RAC, but the arbitration panel unanimously held that the contract was validly terminated on May 8, 1998. AE allegedly did not inform IP of the RAC termination until August 31, 1998.

On May 29, 1998, after the RAC was terminated but before IP learned of the termination, AE and IP executed Amendment No. 1 to the ESA ("Amended ESA"), which readopted the ESA as of that date.

The ESA and, therefore, the Amended ESA contained representations by AE that there were no pending or threatened actions, suits, arbitrations or the like against AE that would materially and adversely affect AE. They also contained representations that AE was not in breach of any material contracts, and that AE would not terminate

or modify its contracts with the natural gas suppliers without providing notice to, and seeking approval from, IP.

Because of the termination of the RAC, AE has been and is likely to continue to purchase substitute gas at a higher price. Much of the increased price of gas available to AE has been passed on to IP in the form of increased steam prices. On October 10, 2000, IP filed suit against AE for breach of Section 2.02(f) of the ESA and negligent misrepresentation. On November 7, 2002, we granted IP partial summary judgment on its breach of contract claim, finding no issues of material fact existed as to whether AE breached the Amended ESA (specifically Section 2.02(f)), and that IP was entitled to judgment as a matter of law on that element. The court left issues of causation and damages to be determined by the jury.

On November 3, 2004, a jury returned a verdict in favor of IP on its breach of contract claim and, as a result, awarded IP $41 million in damages. Following the trial, both parties filed post-trial motions; however, resolution of such was made difficult due to contemporaneous court proceedings.[1] We now address the still existing post-trial motions.

---

[1]On November 29, 2004, AE informed the court that it had filed for bankruptcy. All post-trial motions before the court were stayed pending bankruptcy proceedings. Additionally, TransCanada Pipelines Ltd. and TransCanada Gas Services, Inc. ("TransCanada") attempted to intervene and to unseal the court records and obtain trial exhibits. The motion was denied. The Seventh Circuit later affirmed our denial. In re TransCanada Pipelines Ltd., No. 05-1746 (7th Cir. 2005).

## LEGAL STANDARDS

**A. Judgment as a Matter of Law Pursuant to Rule 50(b)**

In deciding whether to, pursuant to Fed. R. Civ. Proc. 50(b), grant a motion for judgment as a matter of law, a court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party to whom the motion is directed." Cygnar v. City of Chicago, 865 F.2d 827, 834 (7th Cir. 1989)). The court will grant the motion "only when there can be but one conclusion from the evidence." Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 636 (7th Cir. 1996). The court may not weigh the evidence, judge the credibility of the witnesses, or substitute its judgment of the facts. Cygnar v. City of Chicago, 865 F.2d at 834. "If the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without speculation over legally unfounded claims, the motion should be denied." Cygnar, 865 F.2d at 835.

**B. Remittitur or New Trial Pursuant to Rule 59(a)**

A new trial may be granted on all or some of the issues that have been tried "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. Proc. 59(a). The court is granted wide discretion when it considers a motion for remittitur. See Medcom Holding Co. v.

Baxter Travenol Lab., 106 F.3d 1388, 1397 (7th Cir. 1997) (motion for new trial on damages); Miksis v. Howard, 106 F.3d 754, 764 (7th Cir. 1997) (motion for new trial on damages and remittitur).

When deciding whether a federal jury verdict is excessive, courts must apply a federal standard. Pincus v. Pabst Brewing, 893 F.2d 1544, 1554 (7th Cir. 1990). Under that standard, where an award is not rationally connected to the evidence, the court has the authority (1) to order a remittitur, or (2) to order a new trial limited to damages, if the plaintiff is not willing to accept a remittitur. See id. at 1556.

A motion for a new trial should succeed only where a verdict is against the manifest weight of the evidence presented at trial. Lowe v. Consol. Freightways of Delaware, Inc., 177 F.3d 640, 641 (7th Cir. 1999). Rule 59(a) is not intended to allow parties to merely relitigate old matters or to present the case under new theories; rather, a motion for a new trial not predicated on the discovery of new evidence is intended to correct manifest errors of law or fact. See Cefalu v. Village of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000); Tablewares, Inc. v. Mogi Trading, 100 F.3d 1353, 1367 (7th Cir. 1996). In considering the motion, we must view the evidence in the light most favorable to IP, the party who prevailed. See Carter v. Chicago Police Officers, 165 F.3d 1071, 1079 (7th Cir. 1998).

## C. Attorneys' Fees, Costs and Expenses

Under Maine law, attorneys' fees may only be awarded where there is a contractual relationship allowing for the award of such fees. Villas by the Sea Owners Ass'n v. Garrity, 774 A.2d 1115, 1116 (Me. 2001). The court, at its discretion, may award costs pursuant to 14 M.R.S.A. § 1501. Teel v. Young, 389 A.2d 322, 324 (Me. 1978). It is also within the court's discretion to award reasonable expert witness fees. 16 M.R.S.A. § 251.

## DISCUSSION

### A. Judgment as a Matter of Law Pursuant to Rule 50(b)

AE moves, pursuant to Rule 50(b), for judgment as a matter of law on IP's Section 2.02(f) claim. In support of its motion, AE argues: 1) IP failed to introduce evidence that AE's breach of Section 2.02(f) caused the increased steam costs; 2) IP's assertions regarding a loss of the benefit of the bargain cannot salvage its Section 2.02(f) claim; and 3) IP's contention that the representation in Section 2.02(f) caused it to proceed with the project is unsound. These arguments are identical to those put forth in AE's October 29, 2004, motion for judgment as a matter of law. We denied that motion, finding that the case presented disputed issues of material fact that should be decided by the jury. AE's motion fails to present additional reasons why we should

change our previous decision or a showing of how the jury acted unreasonably. Accordingly, AE's motion for judgment as a matter of law is denied.

**B. Remittitur or New Trial Pursuant to Rule 59(a)**

AE next moves the court, pursuant to Rule 59(a), to issue a remittitur or new trial. In support of this motion, AE argues that our decision to grant partial summary judgment on Section 2.02(f) and our damages instruction were erroneous, thereby resulting in an inflated damages award. Additionally, AE contends that our jury instruction regarding election of remedies and refusal to instruct the jury on nominal damages were incorrect. We disagree.

1. New Trial Based on Granting of Partial Summary Judgment

AE argues a new trial is warranted because we erred in granting partial summary judgment on the IP's Section 2.02(f) claim. AE filed a motion to reconsider the partial summary judgment on November 19, 2002, which we denied. AE essentially makes the same arguments here as it did in its motion to reconsider. AE now asks the court to reconsider its decision again. As was the case with its motion for judgment as a matter of law, AE has not provided any new basis for its contentions that would convince us to revisit the propriety of our prior decision. Again, we decline to replow old ground.

## 2. Remittitur or New Trial Based on Damages Instructions

AE contends that our damages instructions were erroneous in two respects: 1) that the damages instruction given to the jury was incorrect and 2) that our guidance to the jury on the issue of nominal damages was incomplete.

AE first challenges our jury instruction on damages. AE asserts the jury should have been instructed that when market price is used to determine damages, the time of determining such is at the time the buyer learns of the breach. We do not agree. AE's proffered instruction is based on 11 M.R.S.A. § 2-713 and § 2-723, dealing with anticipatory repudiation, which does not apply here. The applicable damages provisions of the UCC require that IP be put in as good a position as it would have been had AE fully performed under the ESA. 11 M.R.S.A. § 1-106 (2003). The jury instruction given was completely in line with the appropriate rule.

Next, AE challenges our decision not to instruct the jury separately on nominal damages. AE contends that a nominal damages instruction would have informed the jury that there are situations where a breach occurs but where the breach does not result in damages. We declined to give this instruction because, coupled with the damages instruction given, it would have been repetitive. The damages instruction given required the jury to award damages in accordance with the amount of IP's injury. If the jury found that IP suffered no injury, it could have refrained from awarding

damages. Nothing in the instruction impaired the jury from doing so. Beyond that, there was ample evidence to support the fact of damages and in the amount the jury awarded. Therefore, we find AE's allegation that a new trial is warranted, as a result of our damages instruction, is without merit.

3. New Trial Based on Election of Remedies Instruction

Finally, AE asserts that it is entitled to a new trial based on our instruction to the jury regarding election of remedies. We disagree. AE argues that additional language should have been included in the instruction that we gave. This is an argument that should have been proffered during the jury instruction conference, prior to the final instruction being given to the jury. AE has offered no support that they did so, but even if they had, the final version of the instruction did not include the language they proffer, at best indicating that the court rejected their argument. Therefore, AE's motion for a new trial based on the court's election of remedies instruction is denied.

**C. Attorneys' Fees, Costs and Expenses**

As the prevailing party in the suit, IP has moved for an award of attorneys' fees, costs and expenses in the amount of $3,003,004.98. In support thereof, IP points to Section 10.04 of the ESA, which states:

> "Remedies Upon Default by Seller. Upon the occurrence
> of an Event of Default by Seller, Buyer may exercise any
> one or more of the following remedies:

> a. Exercise all remedies available at law or at equity or other appropriate proceedings, including bringing an action or actions from time to time for damages and expenses resulting from the Event of Default, which shall include all costs and expenses reasonably incurred in the exercise of its remedy (including reasonable attorneys' fees)."

Additionally, IP has provided a fee history, which specifies the attorneys who worked on the case, the number of hours they spent doing so and their hourly rate.

AE objects to $631,245.19 of IP's calculation for attorneys' fees, cost and expenses connected to: 1) IP's January 31, 2003, motion for preliminary injunction and subsequent motion for leave to file an amended complaint in the amount of $81,000.45; 2) IP's decision to withhold monies from its steam payments and AE's corresponding motion for a temporary restraining order in the amount of $30,872.87; 3) AE's bankruptcy proceeding, including the dispute relating to TransCanada's attempt to obtain an unredacted copy of the ESA in the amount of $212,116.58; and 4) IP's expert witness fees in the amount of $307,255.29.

1. Costs in Connection with IP's Motion for Preliminary Injunction

IP insists that it is entitled to $81,000.45 in attorneys' fees, costs and expenses connected to its January 31, 2003, motion for preliminary injunction and subsequent motion for leave to file an amended complaint. AE, relying on Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., argues that it was impossible for IP to

successfully get a preliminary injunction issued, and therefore awarding attorneys' fees, costs and expenses related to such would be unreasonable. 527 U.S. 308, 333 (1999). Under Grupo Mexicano de Desarrollo S.A., the district court lacks power to issue a preliminary injunction to preclude a defendant from transferring assets in which no lien or equitable interest is claimed. id. We find this case inapplicable to the present situation. IP, in arguing for the preliminary injunction, was claiming an equitable interest in the money. It is understood that the motion for that injunction failed; however, we find that it was at least reasonable for IP to attempt to protect their interest. Therefore, we grant IP's motion for order awarding attorneys' fees, costs and expenses, as it pertains to the litigation surrounding the preliminary injunction and award IP $81,000.45.

2. Cost in Connection with IP's Withholding of Monies from Steam Payment

IP next insists that it is entitled to attorneys' fees, costs and expenses in the amount of $30,872.87 incurred in unsuccessfully defending its decision to withhold monies from its steam payments. Section 4.05(c) of the ESA explicitly provides:

> "No Set-off. All payments made by either Party shall be free and clear of, and without any deduction for or on account of, any set-off, counterclaim, or other liability to the other Party, except to the extent required by law."

IP argues that its concerns regarding AE's ability to pay on a verdict in IP's favor lead to its decision to withhold monies. Those worries, IP asserts, were justified

and well-grounded, as evidenced by the bankruptcy petition AE filed subsequent to the verdict in this case. However justified IP's concern were, it is evident that such action is barred under the ESA. IP essentially asks the court to go outside the contract. We decline to do so.

It is a possibility in every litigation that an opposing party may not be able to pay an amount awarded by the jury. It is also possible, in every contractual relationship, that litigation could ensue. If nonpayment of a jury award was a concern of IP's, and it wanted the option of withholding monies from its steam payments as a possible remedy, then it should have explicitly allowed for such in the ESA. It did not do so. Additionally, the device of injunctive relief was the intermediate relief possible based on IP's concern, the expenses of which have been allowed. Therefore, IP's motion for an order awarding attorneys' fees, cost and expenses related to its decision to withhold monies from its steam payments is denied.

3. Costs in Connection with Contemporaneous Litigation

Third, IP claims entitlement to $212,116.58 in attorneys' fees, costs, and expenses incurred from both AE's bankruptcy proceeding and IP's litigation with TranCanada.

Upon AE filing for bankruptcy, IP involved itself in the proceeding in an attempt to preserve and pursue the damages award from the present case. IP filed in the

Bankruptcy Court a "Motion for Relief from Automatic Stay to Effectuate the Setoff or Recoupment of Mutual Obligations Between International Paper Company and the Debtor" which is still currently pending. The primary purpose of the motion is to allow IP to recoup or setoff the $41 million judgment against amounts AE charges IP for steam. Therefore, because IP attempts to protect the jury's damages awarded, we conclude that its involvement in the proceeding is reasonably connected to the present case enough to award attorneys' fees, costs and expenses associated with doing so.

IP also asks the court to award its litigation expenses from the unsuccessful intervention attempts of TransCanada in the bankruptcy proceeding. There would be no need for IP to be incurring costs to protect its confidential information from TransCanada in the bankruptcy court were it not for AE's breach of the ESA and IP's attempt to exercise its remedy. IP was defending its position by resisting TransCanada's motion made in the bankruptcy court. Thus, we also find IP's involvement with TransCanada to be reasonably connected to the present case and award attorneys' fees, costs and expenses related to such.

For these reasons we conclude that IP is entitled to reimbursement of the $212.116.58 from the AE bankruptcy and the TransCanada attempted intervention.

4. Costs in Connection with the Brattle Group

Finally, IP urges the court to award $307, 225.29 in fees and costs associated with its use of the Brattle Group, an expert witness firm, for trial purposes. Under Maine law, a litigant may pay an expert any sum that may be agreed upon, but that amount is not binding on the trial court. Grant v. Warren Bros. Co., 405 A.2d 213, 221-222 (Me. 1979).

AE challenges IP's request, arguing that these amounts were presented to the jury and thus comprised a portion of the damages award. AE asserts that these fees were already accounted for and urges that IP should be barred from collecting them again. We disagree.

Before trial the court considered a motion *in limine* by AE seeking to bar IP's economic expert, Dr. Harvey Rosen, from testifying on the fees and costs, excluding attorneys' fees, incurred by IP during the course of the litigation. If anything, this information was presented to the jury to decide whether IP's expert witness fees were recoverable, not the amount to be awarded. Consequently, IP did not waive its right to request the court to calculate the costs and expenses stemming from the Brattle Group's services in presenting Dr. Rosen's testimony. No such fees were included in the jury's verdict award. That is a proper determination for us to make. Therefore,

IP's motion for order awarding additional fees and costs incurred for the Battle Group's services is granted and we award IP their requested amount.

**D. Prejudgment Interest**

IP's motion for prejudgment interest requests the court grant prejudgment interest in the amount of $3,339,044. AE opposes the motion only on the basis that the jury verdict and $41 million judgment was wrong because we have determined that the jury's verdict was in accordance with the evidence, we grant IP's motion for the requested amount of prejudgment interest.

## **CONCLUSION**

Based on the foregoing analysis, AE's motion for judgment as a matter of law, or in the alternative a remittitur or a new trial is denied. IP's motion for attorneys' fees, costs and expenses is denied in part and granted in part. IP's motion for prejudgment interest is granted. IP is awarded prejudgment interest, attorneys' fees, costs and expense in the amount of $3,939,346.32.

                                                     Charles P. Kocoras
                                                     Chief Judge
                                                     United States District Court

Dated:    September 30, 2005